**Bruce R. BANTHER, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 69, 1999.**

Supreme Court of Delaware.

Submitted: Sept. 26, 2001.
Decided: Oct. 30, 2001.

---

**5.** *In re McCoy,* Del.Supr., 767 A.2d 191 (2001); *In re Rich,* Del.Supr., 559 A.2d 1251 (1989).

Edward Gill, Esquire (argued), Georgetown, Delaware, and Kevin M. Howard, Esquire, Young & Malmberg, Dover, Delaware, for appellant.

John Williams, Esquire (argued) and Marie O'Connor Graham, Esquire, Department of Justice, Dover, Delaware, for appellee.

Before WALSH, HOLLAND and BERGER, Justices.

HOLLAND, Justice.

This is the direct appeal of the defendant-appellant, Bruce R. Banther. Following a jury trial in the Superior Court, Banther was convicted of Murder in the First Degree, Possession of a Deadly Weapon During the Commission of a Felony, Forgery in the Second Degree and Felony Theft. The Superior Court sentenced Banther to life in prison for the First Degree Murder conviction.

### Original Remand

During the pendency of this appeal, we granted Banther's Motion for Remand to the Superior Court. The purpose of the remand was to determine whether a new trial should be granted based upon newly discovered evidence. The Superior Court held an evidentiary hearing on Banther's motion on October 4–6, 2000.

One of the issues on remand was the mental capacity of the jury foreperson, Jane Smith,[1] to serve as a juror. The Superior Court conducted an *in camera* inquiry and questioned Smith. The Superior Court concluded that Smith "was fully capable of rendering satisfactory jury service." Therefore, the Superior Court denied Banther's motion for a new trial. The record was returned to this Court and the matter was submitted for a decision after oral arguments.

### Juror's Voir Dire Response

On appeal, Banther now argues that Smith's jury service was improper for a reason that was not addressed by the Superior Court on remand. During the *in camera* inquiry about her mental capacity, in response to a question about an interruption in her employment history, Smith testified, "I had been assaulted and became pregnant, did not believe in abortion and I went through an open adoption with my son who is now eight." This disclosure by the former juror was not pursued with any further questioning by the Superior Court.

Banther contends that the expanded record after remand reflects that Smith gave a false answer to a material question during her initial *voir dire* which resulted in a denial of both his federal and his state constitutional rights to a trial by an impartial jury. The basis for Banther's argument relates back to the individual *voir dire* that was conducted when the members of Banther's jury were being selected.

Smith was asked: "Have you or a close friend or relative been a victim or a witness to a violent crime?" Smith replied: "No, your honor."

The State submits there may have been some confusion on Smith's part in answering the *voir dire* question about violent crime. According to the State, for example, if no one was ever prosecuted or convicted for the prior sexual assault of Smith, perhaps a lay person might think there was not a "crime." Thus, the State contends that the current record is not sufficient to determine whether Smith answered the violent crime *voir dire* question falsely, as Banther argues, or whether Smith was merely confused by the *voir dire* question. Consequently, the State suggests that the record needs to be clarified before a decision is made regarding Banther's assertion that Smith's response to the violent crime question violated his constitutional rights to be tried by an impartial jury.

### Juror Impartiality

 The accused's right to be tried by a jury of his or her peers is fundamental to the criminal justice system in America.[2] An essential ingredient of that right is for the jury panel to be comprised of impartial or indifferent jurors.[3] Both the Sixth Amendment to the United States Constitution and Article I, § 7 of the Delaware Constitution guarantee a defendant in a criminal proceeding the right to a fair trial by an impartial jury.[4]

 *Voir dire* is the historic method used to identify bias in prospective jurors

---

1. A pseudonym has been assigned by this Court pursuant to Supreme Court Rule 7(d).

2. *Hughes v. State,* Del.Supr., 490 A.2d 1034, 1040 (1985); *see Duncan v. Louisiana,* 391 U.S. 145, 155–56, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *Irvin v. Dowd,* 366 U.S. 717, 721–22, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).

3. *Hughes v. State,* 490 A.2d at 1040 (citing *Turner v. Louisiana,* 379 U.S. 466, 471–72, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965)); *see In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948).

4. *Flonnory v. State,* Del.Supr., 778 A.2d 1044, 1051–52 (2001); *see Turner v. Louisiana,* 379

and is critical to protecting a defendant's right to a fair trial by an impartial jury.[5] "The purpose of *voir dire* examination is to provide the court [and the parties] with sufficient information to decide whether prospective jurors can render an impartial verdict based on the evidence developed at trial in accordance with the applicable law."[6] One of the primary safeguards for impaneling a fair and impartial jury is a defendant's right to challenge prospective jurors, either peremptorily or for cause.[7] That right to challenge is seriously impaired by a juror's denial or nondisclosure of material information in response to a *voir dire* question.[8]

 In *Jackson v. State*,[9] this Court stated that juror impartiality must be maintained, not only in the interest of fairness to the accused in the given case, but also to assure the integrity of the judicial process itself.[10] Jury bias, either actual or apparent, undermines society's confidence in its judicial system.[11] In *Jackson*, we quoted from a case that is now more than ninety years old:

Aside from protecting the rights of parties, in the fair and impartial administration of justice, respect for the courts calls for their condemnation of any improper conduct, however slight, on the part of a juror, of a party, or of any other person, calculated to influence the jury in returning a verdict. So delicate are the balances in weighing justice that what might seem trivial under some circumstances would turn the scales to its perversion. *Not only the evil, in such cases, but the appearances of evil, if possible, should be avoided.*[12]

 Some federal appellate courts have reversed convictions where a juror's mistaken but honest response to a material question on *voir dire* prevented the trial judge from discovering actual bias.[13] To establish reversible error in cases involving inadvertent nondisclosure, a defendant must demonstrate that "a juror failed to answer honestly a material question on *voir dire*," and that "a correct response would have provided a valid basis for a

U.S. at 471–72, 85 S.Ct. 546; *In re Oliver*, 333 U.S. at 257, 68 S.Ct. 499.

5. *Diaz v. State*, Del.Supr., 743 A.2d 1166, 1172 (1999) (citing *United States v. Burr*, C.C.D. Va, 25 F. Cas. 49, 51 (1807) (No. 14,692g)); *see Morgan v. Illinois*, 504 U.S. 719, 729, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992); *Rosales–Lopez v. United States*, 451 U.S. 182, 188, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981).

6. *Hughes v. State*, 490 A.2d at 1041 (citing *Parson v. State*, Del.Supr., 275 A.2d 777, 780 (1971)).

7. *Jackson v. State*, Del.Supr., 374 A.2d 1, 2 (1977).

8. *Id.* at 2. *See generally Sanders v. Scarvey*, 284 Ala. 215, 224 So.2d 247, 251 (1969); *Skiles v. Ryder Truck Lines, Inc.*, Fla. Dist. Ct.App., 267 So.2d 379, 381–82 (1972); *State v. Allred*, 275 N.C. 554, 169 S.E.2d 833, 837–39 (1969); C.T. Foster, Annotation, *Juror's Voir Dire Denial or Nondisclosure of Acquain-*

*tance or Relationship with Attorney in Case, or with Partner or Associate of such Attorney, as Ground for New Trial or Mistrial*, 64 A.L.R.3d 126 (1976).

9. *Jackson v. State*, 374 A.2d at 1.

10. *Id.* at 2.

11. *Id.*

12. *Jackson v. State*, 374 A.2d at 2–3 (emphasis added) (quoting *George F. Craig & Co. v. Pierson Lumber Co.*, 169 Ala. 548, 53 So. 803, 805 (1910)).

13. *See McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 555–56, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) (plurality opinion); Mindy L. Boyce, *THIRTIETH ANNUAL REVIEW OF CRIMINAL PROCEDURE: Introduction and Guide for Users: III. Trial: Right to Jury Trial*, 89 GEO. L.J. 1515, 1531–32, 1532 n. 1610 (2001) (collecting cases).

challenge for cause."[14] Where a juror deliberately concealed non-material information during *voir dire*, however, some federal appellate courts have taken such dishonesty as evidence of bias and granted a new trial.[15] In *Jackson*, we observed that the impartial administration of justice is severely compromised when the juror's nondisclosure of *material* information during *voir dire* is deliberate.[16]

◾ The right of a defendant to a fair trial by a panel of impartial jurors is basic to our system of justice.[17] The failure of a juror to answer accurately a material question on *voir dire* may, in some circumstances, constitute reversible error.[18] During jury selection in a capital murder case, the answer to a question about violent crime is material.

### Record Incomplete

In *Jackson*, we noted that all are duty-bound to be on guard against any impropriety in our system of justice.[19] Foremost in the performance of that duty are the trial judges.[20] This case, like *Jackson*,

14. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. at 556, 104 S.Ct. 845.

15. Mindy L. Boyce, *THIRTIETH ANNUAL REVIEW OF CRIMINAL PROCEDURE: Introduction and Guide for Users. III. Trial: Right to Jury Trial*, 89 GEO. L.J. 1515, 1532 (2001) (collecting cases). *See, e.g., Dyer v. Calderon*, 9th Cir., 151 F.3d 970, 973 (1998) (new trial required because juror intentionally failed to disclose numerous violent crimes committed against relatives); *Burton v. Johnson*, 10th Cir., 948 F.2d 1150, 1158–59 (1991) (new trial required because juror deliberately failed to disclose abusive family situation and defendant claimed she killed husband to protect herself and children from abuse); *United States v. Colombo*, 2d Cir., 869 F.2d 149, 151–52 (1989) (new trial required in prosecution for drug conspiracy and RICO violations because juror deliberately failed to disclose during *voir dire* that brother-in-law was a government attorney); *United States v. Perkins*, 11th Cir., 748 F.2d 1519, 1533 (1984) (new trial required because juror lied during *voir dire* about whether she knew defendant and whether she had been involved in prior litigation); *United States v. Bynum*, 4th Cir., 634 F.2d 768, 771 (1980) (new trial required because juror intentionally failed to reveal that three close relatives were convicted of crimes when asked during *voir dire* whether any family members had been convicted of crimes). *But see, e.g., Fuller v. Bowersox*, 8th Cir., 202 F.3d 1053, 1055–56 (2000) (no new trial required where juror failed to disclose both that the juror's mother was employed at the county jail where defendant was held during the trial and that the juror had previously worked with a law enforcement agency); *Fitzgerald v. Greene*, 4th Cir., 150 F.3d 357, 362–63 (1998)

(no new trial required where juror deliberately failed to disclose that granddaughter was victim of molestation in rape trial); *United States v. Reynolds*, 7th Cir., 64 F.3d 292, 296 (1995) (no new trial required where juror was asked, but did not answer, whether she knew agents working on case, even though she knew agent's sister); *United States v. Langford*, 2d Cir., 990 F.2d 65, 68–71 (1993) (no new trial required where juror intentionally failed to disclose prior prostitution arrests because there was no evidence of juror bias against defendant).

16. *Jackson v. State*, 374 A.2d at 2.

17. *Hughes v. State*, 490 A.2d at 1040; *see Duncan v. Louisiana*, 391 U.S. at 155–56, 88 S.Ct. 1444; *Irvin v. Dowd*, 366 U.S. at 721–22, 81 S.Ct. 1639.

18. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. at 555–56, 104 S.Ct. 845; *Dyer v. Calderon*, 151 F.3d at 973; *United States v. St. Clair*, 8th Cir., 855 F.2d 518, 521–23 (1988); *cf. Fitzgerald v. Greene*, 150 F.3d at 362–63 (juror's interpretation of *voir dire* question did not indicate dishonesty but rather factual accuracy); *United States v. Edmond*, 9th Cir., 43 F.3d 472, 473–74 (1994) (simple forgetfulness of juror did not indicate lack of impartiality); *Amirault v. Fair*, 1st Cir., 968 F.2d 1404, 1405–06 (1992) (juror's genuine blocking of incident from memory did not indicate dishonest response).

19. *Jackson v. State*, Del.Supr., 374 A.2d 1, 3 (1977).

20. *Id.*

represents another example of the need for continued vigilance.

In this case, the record does not reflect why Smith did not give an affirmative response during *voir dire* to the violent crime question. The reason for Smith's negative response to the violent crime *voir dire* question is critical to deciding Banther's argument on that issue. Therefore, it is appropriate to secure a full and complete record of the assault identified by Smith that resulted in her pregnancy and the basis for Smith's negative response to the violent crime question.

### Conclusion

This matter is remanded to the Superior Court for the purpose of determining the nature of the assault referred to by Smith that resulted in her pregnancy, whether the assault involved an arrest and prosecution, and the reason for Smith's negative response to the violent crime question. The Superior Court should transmit its findings of fact and conclusions of law to this Court within sixty days. Jurisdiction is retained.[21]

---

**21.** Supr. Ct. R. 19(c).